UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

PAMELA RAY,

      Plaintiff,

v.

ADAMS AND ASSOCIATES, INC., a business entity, OTHNIEL McDOWELL, an individual, and MARY GEOGHEGAN, an individual,

      Defendants.
_____/

## COMPLAINT

Plaintiff, Pamela Ray ("Ray"), through her undersigned attorneys, files this Complaint against the Defendants, Adams and Associates, Inc., Othniel McDowell, and Mary Geoghegan (hereinafter, "Defendant"), and alleges:

## JURISDICTION AND VENUE

1. This suit is brought against the Defendant pursuant to 29 U.S.C. § 201 *et seq.* ("Fair Labor Standards Act" or "FLSA").

2. Jurisdiction is conferred upon this Court by:

    (a) 28 U.S.C. § 1331;

    (b) 28 U.S.C. § 1343; and

    (c) 29 U.S.C. § 216(b), which allows for a FLSA claim to be brought in any court of competent jurisdiction.

3. Venue is proper for the Southern District of Florida because:

(a) Ray was employed in the Southern District of Florida by the corporate Defendant which at all material times conducted, and continues to conduct, business in Broward County; and

(b) Additionally, venue lies because the acts that gave rise to Plaintiff's claims occurred in the Southern District of Florida and because the corporate Defendant keeps an office for the transaction of its customary business in this district (Adams and Associates, Inc. has an office in South Florida and the individual Defendants reside in the Southern District of Florida).

## CONDITIONS PRECEDENT/ADMINISTRATIVE EXHAUSTION

4. Plaintiff has complied with all conditions precedent in this case, or they have been waived.

## PARTIES

5. Ray resides within this judicial district.

6. Defendant Adams and Associates, Inc. is a business entity which, at all times material, conducted substantial and continuous business in this judicial district, and is subject to the laws of the State of Florida and the United States. Adams and Associates, Inc. owns and operates a business in South Florida at which for all material times Ray worked for and her labor benefited.

7. The corporate Defendant paid employees and paid Ray (through the individual Defendants) and has gross annual sales volume that greatly exceeds $500,000 annually, at least for years 2018-21. The corporate Defendant has two or more employees engaged in commerce, as they have two or more employees who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida. For example, in the South Florida location Defendant has at least 15 employees two or more who use computers, computer software, office supplies, copiers which were manufactured outside the State of Florida (and thus have moved in interstate commerce), and use cars and vehicles that in turn use gasoline, which vehicles,

boats, and gasoline were manufactured outside the State of Florida. Further, the Defendant has various employees make long distance phone calls (suppliers, internet purchases, and others) and sent emails to individuals who reside out of the State of Florida regularly and recurrently to effectively communicate for the businesses to operate.

8. Additionally, Ray is entitled to individual coverage, as she regularly and recurrently participated in the actual movements of goods or services and commerce across state lines.

9. Individual Defendants McDowell and Geoghegan are high-level managers of the corporate Defendant and operate it day-to-day and have operational control over the corporate Defendant deciding all financial decisions and having say over numerous employees and directing their work day-to-day, including how much they would be paid and when they would be paid, as the individual Defendants had the power the hire and fire, daily managed the company and were ultimately responsible for the profitability of the business—they terminated Ray. Concerning Ray, Defendants McDowell and Geoghegan hired her, told her what to do day-to-day, determined how much and whether she would be paid (pay did not include overtime and she was required to work off of the clock and not overtime hours), and Ray had to follow the individual Defendants' orders.

10. The corporate Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act, and so too is the individual Defendant.

11. The corporate Defendant is an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act.

12. The corporate Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act. During all times relevant to this action, the corporate Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

13. Ray was an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act.

14. Ray was a non-exempt employee of Defendant who was subject to the payroll practices and procedures described in Paragraphs 23, 24, and 25 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint. At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Ray performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

## STATEMENT OF FACTS

15. Within the past three (3) years (July 2018 to December 2019), Ray worked for the Defendant performing various duties. Ray worked under the title "laborer", which duties included solely performing manual labor, and her compensation was hourly.

16. Ray's duties included doing whatever task the Defendant instructed her to perform, which varied depending the time (but primarily consisted of cafeteria duties and other assigned manual labor work to perform).

17. Ray did not have the ability to hire or fire anyone (nor did she hire or fire anyone), and she did not regularly and customarily direct the work of any employees, much less two or more full-time workers.

18. Ray was only given tasks that were designed to facilitate production work of the Defendant, such as the tasks described above, all of which consisted of regular, recurrent, and routine work that did not involve her exercising independent judgment and discretion on matters of significance.

19. Ray's primary duties were not management.

20. During Ray's employment, Ray did not have any authority to interview, select, and/or train employees. Ray did not have any authority to set and adjust the rates of pay and hours of

work for any employees. Ray had no authority to direct the work of employees. Ray did not maintain production or sales records at all when he worked for the Defendant, nor did he use any such records to supervise or control any employee. In fact, Ray knows little about the business's financing or financial success or failure. The finances were not his responsibility. Ray did not supervise any staff. Ray had absolutely no say concerning any of the costs. For example, concerning wages paid to employees, Ray had no say concerning what any particular employee would be paid, how many employees could work in the buildings, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by the Defendants. Ray had no authority to spend any of the Defendant's money at all, and had no authority to authorize the payment of bills. Ray never opened up any mail that came to the building for purposes of making any decision concerning the business with respect to that mail.

21. While Ray worked for the Defendants, he never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status. While Ray worked for the Defendants, she never handled employee complaints and grievances, as that was for the Defendants to do. Also, Ray never disciplined employees, nor did she have the power or authority to do that. Ray did not plan any work for any employee, as there was no work to plan. Ray never determined any techniques to be used by employees to do their job. Ray never apportioned work among any employees, as there were no employees who reported to her to whom to apportion work. Ray never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that. Ray had no involvement in controlling the flow and distribution of materials or merchandise and supplies. Ray had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. Ray had no involvement with respect to budgeting. Ray was not involved in reviewing any sort of financial documents or statements of the buildings, and she did

not review any such documents, nor was Ray supposed to. Ray had no involvement in monitoring or implementing legal compliance measures. There were no legal issues that Ray had anything to do with in terms of deciding how they would be handled or dealt with while she worked for Defendant, nor did she have anything to do with paperwork concerning new employees or hires. Ray simply followed the established techniques and procedures with respect to her duties, all of which were repetitive, routine, and recurrent work.

22. Ray did not do anything that could have resulted in financial losses for the Defendants. Ray did not perform work that was directly related to management or general business operations of Defendants or their customers, because Ray did not perform work directly related to assisting with the running or servicing of the business, but rather was engaging in production work (manual labor in the cafeteria and other manual tasks, and work arising out of that, communications with other workers). Ray also did not perform work directly related to the management or general business operations of the Defendants because Ray did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Rather, Ray was one more person looking to perform production work the Defendants rely on so heavily, assist with the production work of getting children fed.

23. In the course of employment with Defendant, Ray worked the number of hours required of her, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

24. Ray regularly worked in excess of forty (40) hours per workweek, but was not paid for lunch time though she worked through it and was not completely relieved of duty and tried to put

6

more than 40 hours on her time sheets but was told by the individual Defendants she would not be paid for any time over 40 hours.  For example, the Defendant had a policy in which the full-time employees, like Ray, were scheduled to work 45 hours per week, with 1 hour supposedly being for a break, so the hours worked and paid for appeared to be 40 in a workweek.  However, the Defendant did not allow Ray to take the 1 hour break, nor did they allow her to put on her timesheet the true accurate number of hours that she was working, which was 45.  Thus, for each week, and Ray generally worked 5 days per week, Ray was required to work 5 hours for which she was not compensated.  Ray complained about this to Defendant's HR department, specifically to Miss Chellie, who ran the HR department.  Thus, all of her timesheets indicate that she had taken 5 hours for a "lunch/meal" break, but in reality no break was taken, and the Defendant knew it.  One week (in September 2019) Ray turned in a timesheet for the hours Ray worked (outside of the 5 hours that were mislabeled "lunch/meal' break, which was 42 hours and 30 minutes), but the Defendant told her to resend the timesheet indicating that she worked only 40 hours.  Thus, Ray was not paid for the 2 and one-half hours of time she worked, and Defendant McDowell put on the timesheet that the 2 and one-half hours was "unauthorized".  Ray put the 42 and one-half hours on this timesheet because she was routinely working more than 40 hours (45 to be precise) but putting 40 hours on the timesheet because she was told by both Defendant McDowell and Miss Chellie that Ray would not be paid for any hours over 40, but Ray was upset that she was working hours without being compensated at all.  Defendant wound up paying Ray 2 weeks later for the overtime hours she put on the timesheet, but paid it at a straight-time rate.  These issues were raised to Defendant Geoghegan when Ray was terminated, but never rectified.

     25.    The Defendant should have partial accurate records of hours worked, because she filled out the timesheets as indicated above.

26. Ray has retained the undersigned legal counsel to prosecute this action in his behalf, and has agreed to pay them a reasonable fee for their services.

27. Ray is entitled to his reasonable attorneys' fees for prosecuting this action, whether or not he is the prevailing party.

## **COUNT I – RECOVERY OF OVERTIME COMPENSATION**

28. Ray re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 27 above as though fully set forth.

29. Ray is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

30. By reason of the intentional, willful, and unlawful acts of Defendant, Ray has suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

31. As a result of the Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, Ray is entitled to liquidated damages as provided in § 216 of the FLSA, and is entitled to recover damages for three (3) years.

WHEREFORE, for workweeks within three (3) years of the filing of this Complaint, Ray demands judgment against Defendants for the wages and overtime payments due him for the hours worked by him for which he has not been properly compensated (back pay), liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: ___December 15, 2021_____

                                          Respectfully submitted,

By: /s/ *Chris Kleppin*
Chris Kleppin
Fla. Bar No. 625485
ckleppin@gkemploymentlaw.com
The Kleppin Firm, P.A.
*Attorneys for Plaintiff*
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax (954) 474-7405
Secondary E-Mails: assistant@gkemploymentlaw.com